**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **WILLIAM G.,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| v. | : | **Case No. 2:25-cv-00552** |
| | : | **Judge Edmund A. Sargus** |
| | : | **Magistrate Judge S. Courter M. Shimeall** |
| **COMMISSIONER OF** | : | |
| **SOCIAL SECURITY,** | : | |
| | : | |
| **Defendant.** | : | |

**REPORT AND RECOMMENDATION**

Plaintiff, William G., brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for social security disability insurance benefits ("DIB").    This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 10).  For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

**I.      PROCEDURAL HISTORY**

Plaintiff protectively applied[1] for DIB on May 6, 2019, alleging disability as of September 20, 2014, due to major depressive disorder, shoulder surgery with related weakness, hearing loss and tinnitus, and ocular hypertension.  (ECF No. 6-5, PAGEID ##: 167–68; ECF No. 6–6, PAGEID #: 205.)  Plaintiff's application was denied initially on August 6, 2019, and upon reconsideration

---

[1] A protective filing date is deemed to be the date a claimant first contacted the Social Security Administration about filing for disability benefits.  It may be used to establish an earlier application date than when the Social Security Administration received the claimant's signed application.  *See* http://www.ssa.gov/glossary.

on October 10, 2019. (ECF No. 6-3 at PAGEID ## 77–91; 92–105.) Thereafter, Plaintiff appeared, with counsel before an administrative law judge ("ALJ") on January 15, 2021. (ECF No. 6-2, PAGEID ##: 54–75.) On February 2, 2021, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. (*Id.* at PAGEID ##: 27–52.) The Appeals Council denied Plaintiff's request for review, and he filed suit in this Court. *See William G. v. Comm'r of Soc. Sec.*, S.D. Ohio Case No. 2:22–cv–213. (ECF No. 6-13, PAGEID ##: 1917–19.) This Court remanded the matter for further administrative proceedings. (*Id.* at PAGEID ##: 1920–43.)

Subsequently, the Appeals Council remanded this claim. After a hearing on October 5, 2023, the ALJ issued an unfavorable decision on November 1, 2023, applying the five-step sequential process to evaluate his DIB application.[2] (ECF No. 6-12, PAGEID #: 1835–1862.)

- Step One: The ALJ found that Plaintiff did not engage in substantial gainful activity during the period from his alleged onset date of September 20, 2014, through his date last insured of June 30, 2020. (*Id.* at PAGEID #: 1837.)

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1. Is the claimant engaged in substantial gainful activity?
2. Does the claimant suffer from one or more severe impairments?
3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 404.1520(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

- Step Two: Through the date last insured, Plaintiff had the following severe impairments: left shoulder rotator cuff tear; left lateral epicondylitis; and major depressive disorder. (*Id.*)

- Step Three: Through the date last insured, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 11. (*Id.* at PAGEID #: 1838.)

Before proceeding to Step Four, the ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

[T]hrough the date last insured, [Plaintiff] had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he cannot climb ladders, ropes, or scaffolds, cannot crawl, and cannot work at unprotected heights. With the left upper extremity, [Plaintiff] cannot perform overhead reaching and is limited to occasionally pushing and pulling. He can occasionally handle and finger and occasionally reach in all other directions other than overhead. [Plaintiff] can have frequent interactions with supervisors and occasional interactions with coworkers and the public. He can concentrate, persist, and maintain pace to perform simple, routine tasks and make simple work-related decision[s]. [Plaintiff] can adapt to and tolerate no more than occasional changes in a routine work setting.

(ECF No. 6-12, PAGEID #: 1840.)

- Step Four: Through the date last insured, Plaintiff was unable to perform his past relevant composite job as a printing press operator and graphic designer. (*Id.* at PAGEID #: 1854.)

- Step Five: The ALJ concluded that, through the date last insured—when considering his age, education, work experience, and RFC, and in reliance on the Vocational Expert's testimony—there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed, such as a bakery worker or ironer. (*Id.* at PAGEID #: 1855–56.)

The ALJ therefore concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, at any time from September 20, 2014, the alleged onset date, through June 30, 2020, the date last insured. (*Id.* at PAGEID #: 1856.) The Appeals Council denied Plaintiff's request for review on March 28, 2025. (*Id.* at PAGEID ##: 1818–24.) This appeal followed.

3

## II. RELEVANT RECORD EVIDENCE

The Undersigned has reviewed the portions of the administrative record relevant to the claimed errors raised by Plaintiff. Rather than summarizing that information here, the Undersigned will refer and cite to it as necessary in the discussion of the parties' arguments below.

## III. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the

ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices [Plaintiff] on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## IV.     ANALYSIS

In Plaintiff's single assignment of error, he contends that the ALJ discredited a vast majority of the medical source opinions, which document greater mental health limitations than accounted for by the ALJ in his RFC determination.  According to Plaintiff, in rejecting the medical opinions finding more severe mental health limitations, the ALJ failed to comply with the controlling regulation to evaluate Plaintiff's medical records as a whole, and as such created an RFC that was not supported by substantial evidence.  (ECF No. 10, PAGEID ##: 2192–97.)  The Undersigned construes all of this as a challenge to the ALJ's evaluation of the consistency factor.  The Commissioner counters, arguing that the ALJ properly evaluated the medical and nonmedical evidence in the record and appropriately addressed the relevant factors.  Upon review, the Court agrees that the ALJ properly analyzed the medical opinions in conjunction with the relevant factors and record evidence as whole, and thus finds that the ALJ's decision is supported by substantial evidence.

### A.  Legal Standard

A plaintiff's RFC "is defined as the most a [plaintiff] can still do despite the physical and mental limitations resulting from [his] impairments." *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 155 (6th Cir. 2009); *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a).  When determining the

RFC, the ALJ must evaluate several factors, including medical evidence, medical opinions, and the plaintiff's testimony. *Henderson v. Comm'r of Soc. Sec.*, No. 1:08-cv-2080, 2010 WL 750222, at *2 (N.D. Ohio Mar. 2, 2010) (citing *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004)). In doing so, the ALJ must resolve conflicts in the record. *King v. Heckler*, 742 F.2d 968, 974 (6th Cir. 1984). To that end, an ALJ "is only required to include in the residual functional capacity those limitations he finds credible and supported by the record." *Beckham v. Comm'r of Soc. Sec.*, No. 1:19-cv-576, 2020 WL 5035451, at *7 (S.D. Ohio Aug. 26, 2020) (quoting *Lipanye v. Comm'r of Soc. Sec.*, 802 F. App'x 165, 170 (6th Cir. 2020)). And an ALJ is not required to adopt a medical opinion verbatim. *See, e.g.*, *Poe*, 342 F. App'x at 157 ("Although the ALJ may not substitute his opinion for that of a physician, he is not required to recite the medical opinion of a physician verbatim in his residual functional capacity finding.").

The governing regulations describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. § 404.1513(a)(1)–(5).

Regarding two of these categories—medical opinions and prior administrative findings— an ALJ is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [Plaintiff]'s medical sources." 20 C.F.R. § 404.1520c(a). Instead, an ALJ must use the following factors when considering medical opinions or administrative findings: (1) "[s]upportability"; (2) "[c]onsistency"; (3) "[r]elationship with the claimant"; (4) "[s]pecialization"; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the

claim or an understanding of [the SSA's] disability programs policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c)(1)–(5).

Supportability and consistency are the most important of the five factors for evaluating medical opinions and prior administrative findings, and the ALJ must explain how they were considered. 20 C.F.R. § 404.1520c(b)(2).

When evaluating supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the medical opinion, the more persuasive the ALJ should find the medical opinion. 20 C.F.R. § 416.920c(c)(1). When evaluating consistency, the more consistent a medical opinion is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the ALJ should find the medical opinion. 20 C.F.R. § 404.1520c(c)(2). And although an ALJ may discuss how he or she evaluated the other factors, he or she is not generally required to do so. *Id.*

Finally, "[a]lthough the ALJ is not required to use the 'magic words' of 'supportability' and 'consistency' when describing their reasoning, the ALJ must still provide sufficient reasoning, scaffolded with references in the medical record to support their decision, enough for a subsequent reviewer to trace the lines of their reasoning." *Mertle v. Comm'r of Soc. Sec.*, 2024 WL 5160189 at *8, 2024 U.S. Dist. LEXIS 229225, at *22–23 (N.D. Ohio 2024).

At bottom, an ALJ must "provide a coherent explanation of [her] reasoning." *Lester v. Saul*, No. 5:20-CV-01364, 2020 WL 8093313, at *14 (N.D. Ohio Dec. 11, 2020), *report and recommendation adopted*, 2021 WL 119287 (N.D. Ohio Jan. 13, 2021). In other words, the ALJ must "set forth a 'minimum level of articulation' to be provided in determinations and decisions, in

order to 'provide sufficient rationale for a reviewing adjudicator or court.'" *Warren I. v. Comm'r of Soc. Sec.*, 2021 WL 860506, at *8 (N.D.N.Y. Mar. 8, 2021) (quoting 82 Fed. Reg. 5844-01, 5858 (January 18, 2017)); *Decorian P.R. v. Comm'r of Soc. Sec. Admin.*, 2024 WL 1155941, at *3 (S.D. Ohio Mar. 18, 2024) (internal citation omitted). An "ALJ's failure to meet these minimum levels of articulation frustrates [the] court's ability to determine whether [the plaintiff's] disability determination was supported by substantial evidence." *Id.*

## B. The ALJ's Decision Appropriately Addressed the Consistency Factor and was Supported by Substantial Evidence

In this case, Plaintiff takes issue with the ALJ's rejection of more restrictive limitations opined by some medical examiners, contending that "[t]he ALJ dealt with each of these opinions in a vacuum . . . [but the] ALJ failed to acknowledge the record as a whole." (ECF No. 10 at PAGEID #: 2193.) Essentially, Plaintiff's argument can be distilled down to this: the ALJ's rejection of Dr. Mancuso's opinion was in error because other medical opinions also found that he had more severe symptoms. Upon review, however, the Undersigned finds that Plaintiff is relying on selective, more severe portions of medical opinions to support his argument. But when those other medical opinions are examined as a whole and in conjunction with Dr. Mancuso's opinion, the Undersigned finds no error in the ALJ's analysis.

### 1. Dr. April L. Mancuso's Opinion

Plaintiff relies primarily on April L. Mancuso, Psy.D's opinion to support his argument, asserting that her more limiting opinion, especially when viewed in combination with other medical opinion evidence, support his ultimate conclusion that he is more limited than the RFC reflects.

Dr. Mancuso examined Plaintiff on June 11, 2020, on behalf of the Ohio Industrial Commission in conjunction with Plaintiff's worker's compensation application. (ECF No. 6-11, PAGEID ##: 1809–14.)  During the examination, Dr. Mancuso found Plaintiff presented with a sad mood with a flat affect and he teared up during the exam. (*Id.* at PAGEID #: 1811.)  Dr. Mancuso assessed Plaintiff with a 30% moderate impairment in his activities of daily living, social functioning, concentration, persistence, pace, and adaptation. (*Id.* at PAGEID #: 1812.)  Dr. Mancuso opined that Plaintiff would have difficulties dealing with the public and interacting with co-workers and supervisors due to irritability; his ability to sustain focused attention long enough to complete work-related tasks was impaired; and that he would have issues following directions and tasks due to pain, fatigue, and negative thoughts. (*Id.* at PAGEID #: 1814.) She also opined that Plaintiff had adequate insight and judgment but did not have the ability to appropriately react to stressful circumstances or changes in the work setting. (*Id.*)  Dr. Mancuso concluded that Plaintiff was "incapable of engaging in work-related activities from a mental/behavioral health perspective." (*Id.*)

The ALJ found Dr. Mancuso's opinion unpersuasive, explaining both that it lacked internal support in some areas and that it conflicted with the longitudinal mental health record and Plaintiff's daily activities.  First, as to the supportability of the opinion itself, the ALJ noted that Dr. Mancuso's findings were based on a single examination where Plaintiff exhibited a sad mood and flat affect, but had normal thought process, adequate insight, and good judgment. (ECF No. 6-12 at PAGEID #: 1853.)  The ALJ also noted that Dr. Mancuso's opinion was internally inconsistent because her assessed 30% impairment in all functional areas did not support a conclusion that Plaintiff was

unable to engage in *any* work activity.  (*Id.*)  The ALJ further acknowledged that although some of her opinion was supported by Plaintiff's subjective self-reported symptoms and display during the evaluation, that was just one piece of the larger record for the ALJ to consider.  (*Id.*)

As to consistency with the record as a whole, the ALJ noted that Dr. Mancuso's opinion was inconsistent with the medical evidence, including Plaintiff's "history of treatment and medications, the mental status examination findings, and [Plaintiff]'s reported activities of daily living."  (ECF No. 6-12, PAGEID #: 1853.)  Specifically, the ALJ further noted that in mental health appointments with Mr. Borchers in June and July 2020, shortly after Dr. Mancuso's one-time consultative examination, Plaintiff reported occasionally participating in enjoyable activities, expressed recognition of having a healthy mix of required and enjoyable tasks, and was mindful of challenging his irritability in social situations.  (*Id.* (citing to ECF No. 6-9, PAGEID ##: 1372, 1374).)  Accordingly, the ALJ determined that what Plaintiff reported to his regular therapist and Dr. Mancuso were "quite different" and thus, Dr. Mancuso's opinion was "inconsistent with the record as a whole and [Plaintiff's] progress in the evaluated areas of functioning."  (ECF No. 6-12, PAGEID #: 1853.)

Upon review, the Undersigned finds that the ALJ's evaluation of Dr. Mancuso's opinion satisfies the regulatory requirement to address supportability and consistency and is adequately explained when read in the context of the decision as a whole.

As an initial matter, Plaintiff's contention that the ALJ's consistency discussion regarding Dr. Mancuso is inadequate because the ALJ did not specifically elaborate on how the opinion conflicted with Plaintiff's treatment history, activities, and other opinion evidence is without merit.

(*See* ECF No. 10, at PAGEID #: 2194.)  In making this argument, Plaintiff is employing the very same method he accuses the ALJ of—reviewing this portion of the ALJ's opinion in a vacuum. This argument overlooks the ALJ's earlier eleven-page discussion of Plaintiff's mental-health treatment, prior medical opinions, and activities of daily living, which the ALJ incorporated when assessing the persuasiveness of the opinions.  Such reliance on prior record discussion is sufficient; the ALJ need not again rehash what he has already described in detail.  *See Brenda W. v. O'Malley*, No. 2:24-CV-1128, 2025 WL 2750479, at *3 (S.D. Ohio Sept. 29, 2025) ("Courts are permitted to look elsewhere in the ALJ's decision as the ALJ does not need to 'spell out every fact a second time.'"); *Hamm v. Comm'r of Soc. Sec.*, No. 1:25-CV-00423, 2025 WL 3687383, at *9 (N.D. Ohio Dec. 19, 2025) ("[I]t is well established that an ALJ may rely on information articulated elsewhere in his decision to support a persuasiveness finding and need not rearticulate such information in his analysis." (citing *Thornsley v. Comm'r of Soc. Sec.*, No. 5:24-CV-01145, 2025 U.S. Dist. LEXIS 116115, 2025 WL 1702944, at *16 (N.D. Ohio June 18, 2025), *report and recommendation adopted*, 2025 WL 2217714 (N.D. Ohio Aug. 5, 2025))); *see also Crum v. Comm'r Soc. Sec.*, 660 F. App'x 449, 457 (6th Cir. 2016) (finding sufficient the ALJ's rejection of a medical opinion when the reasons for why it was inconsistent with "past treatment records" were listed elsewhere in the opinion).

But in any event, the ALJ did not limit his consistency analysis to that statement; instead, he further compared Dr. Mancuso's one-time examination to the longitudinal treatment records of Ryan Borchers, M.ED., L.P.C.C., and Lee Roach, Ph.D., who provided therapeutic treatment for Plaintiff starting in January 2017.  The ALJ took into account Plaintiff's fluctuating mental health

status from the time he was examined by Dr. Mancuso and his subsequent self-reported activities and improvement with Mr. Borchers.  (ECF No. 6-12 at PAGEID # 1853) (citing ECF No. 6-9, PAGEID ##: 1347, 1349.)  Upon consideration, the ALJ concluded that what Plaintiff expressed to Dr. Mancuso and Mr. Borchers, only a month apart, was "quite different."  (*Id.*)  Plaintiff contends this was a selective use of Mr. Borchers' treatment notes.  The Undersigned disagrees.  Instead, it was logical for the ALJ to consider other medical opinions in close temporal proximity to Dr. Mancuso's examination when determining whether it was consistent with the whole record, especially because she only examined Plaintiff once in comparison to Mr. Borchers and Dr. Roach whose treatment history spanned multiple years.

### 2.  Mr. Borchers' and Dr. Roach's Opinions

As to Mr. Borchers' and Dr. Roach's opinions specifically, Plaintiff's reliance on selective treatment notes from Mr. Borchers and Dr. Roach likewise fails to undermine the ALJ's conclusion that the overall treatment record reflects fluctuating, but generally mild to moderate, functional impairment that improved with consistent treatment.  (*See* ECF No. 10 at PAGEID # 2194.)  Indeed, Plaintiff fails to meaningfully engage or try to distinguish the ALJ's very thorough discussion of their treatment notes as a *whole*.

The ALJ discusses Mr. Borchers' and Dr. Roach's treatment history, acknowledging that from the timespan of January 2017 to June 2020, Plaintiff's mental health fluctuated.  (ECF No. 6-12 at PAGEID #: 1844.)  A review of the records relied upon by the ALJ reflects a fluctuating mental functional status opined by Mr. Borchers and Dr. Roach, mostly ranging from mild to moderate functional impairment, often noting a fair or good prognosis and describing his progress

as "improving."  (*See* ECF No. 6-12 at PAGEID # 1844 (citing ECF No. 6-7 at PAGEID ##: 420–544; ECF No. 6-9 at PAGEID ##: 1252–1352, 1375–89; ECF No. 6-10 at PAGEID ##: 1635–1806).)  The ALJ further noted that in April 2019 Plaintiff had even reported being consistent in participating in enjoyable activities, maintaining proper hygiene, and improving communication skills.  (ECF No. 6-12 at PAGEID #: 1844) (citing ECF No. 6-7 at PAGEID #: 544.)  The ALJ also points out that Mr. Borchers' treatment notes do not reflect the need for "emergent crisis treatment or inpatient psychiatric hospitalization" and that Plaintiff has been able to manage his mental health symptoms through medication and psychotherapy.  (ECF No. 6-12 at PAGEID ##: 1844–45.)

At most, Plaintiff argues that the ALJ's discussion of these opinions was selective, but in making this argument, Plaintiff only selects the portions of their treatment notes that support his position.  (*See e.g.* ECF No. 10 at PAGEID ##: 2194–95 (citing to treatment records from July 12, 2017, February 19, 2020, and May 2020).)  For example, one of the selected records Plaintiff cites to in his brief was from a session dated October 21, 2019, where Dr. Roach found Plaintiff to have some marked functional limitations in the areas of concentration, persistence, and pace, as well as adapting.  (*See* ECF No. 10, PAGEID #: 2195 (citing ECF No. 6-9, PAGEID #: 1344).)  But occasional findings of marked limitations are insufficient to overturn the ALJ's decision.  Indeed, an independent review of the record indicates that the very next week Mr. Borchers' October 29, 2019 treatment records noted only moderate limitations in those previous categories and that Plaintiff was "sustaining improvements in his efforts" in all categories.  (*See* ECF No. 6-9, PAGEID #: 1346.)  Thus, while the Undersigned acknowledges that there are some examples of where Mr. Borchers or Dr. Roach found Plaintiff to have marked limitations, the ALJ was not incorrect in

noting that, overall, the treatment notes "consistently note progress and largely fair to good prognosis." (ECF No. 6-12, PAGEID #: 1844.)

Ultimately, even if there is record evidence to support Plaintiff's position, as long as there is also substantial record evidence to support the ALJ's opinion, as is the case here, the Undersigned must recommend affirming. *See Napier v. Comm'r of Soc. Sec.*, 127 F.4th 1000, 1007 (6th Cir. 2025) ("[A]s long as the ALJ's findings were, as here, supported by substantial evidence, we may not second-guess them, even if substantial evidence would support the opposite conclusion." (citation omitted)); *Nash v. Comm'r of Soc. Sec.*, No. 19-6321, 2020 U.S. App. LEXIS 25360, 2020 WL 6882255, at *4 (6th Cir. Aug. 10, 2020) ("Even if the record could support an opposite conclusion, we defer to the ALJ's finding because it is supported by substantial evidence, based on the record as a whole." (internal citations omitted)). Here, a review of Mr. Borchers' and Dr. Roach's treatment notes, as a whole, support the ALJ's determination of no more than moderate mental health limitations.

### 3. Other Opinion Evidence

Likewise, Plaintiff's contention that the ALJ erred because the record as a whole contained evidence consistent with Dr. Mancuso's opinion also fails. First, the Undersigned cannot re-weigh the evidence. Thus, just because there is other record evidence that could support a different outcome does not mean the ALJ erred. *See Jenna B. v. Comm'r of Soc. Sec.*, No. 3:25−CV−00126, 2025 WL 3653233, at *9 (S.D. Ohio Dec. 17, 2025), *report and recommendation adopted*, 2026 WL 895930 (S.D. Ohio Apr. 1, 2026) ("The role of the Court is not to reweigh the evidence, but to

make sure the ALJ considered the proper factors and supported her conclusion with substantial evidence." (citations omitted)).

Second, insofar as Plaintiff suggests the ALJ erred by failing to discuss, in the same paragraph, how Dr. Mancuso's opinion aligned with the opinions of other mental-health providers such as Douglas Pawlarczyk, Ph.D., Deborah Koricke, Ph.D., and Lisabeth Babson, Ph.D., that argument is unavailing. The regulations required the ALJ to consider all of the medical opinions, but they did not obligate him to compare and contrast every opinion with every other opinion each time he assessed persuasiveness. *See Elizabeth A. v. Comm'r of Soc. Sec. Admin.*, No. 2:22-CV-02313, 2023 WL 5924414, at *6 (S.D. Ohio Sept. 12, 2023) ("Although the regulations require ALJs to consider every medical opinion on record, they do not require ALJs to "articulate whether the opinion was consistent with each and every piece of evidence in the record." (citing and quoting in part *Simpson v. Comm'r of Soc. Sec.*, No. 1:20-CV-2767, 2021 WL 8342840, at *8 (N.D. Ohio Nov. 30, 2021), and *Hawk v. Comm'r of Soc. Sec.*, No. 1:20-CV-00081, 2021 WL 320739, at *7 (S.D. Ohio Feb. 1, 2021) (Bowman, M.J.) (collecting cases))).

Furthermore, the Undersigned finds that the ALJ properly considered these other medical opinions independently and against the record as a whole. For example, the ALJ explained that Dr. Pawlarczyk's opinion was not persuasive because his opinion was rendered in December 2016, prior to when Plaintiff started receiving mental health treatment and was otherwise vague and provided no function-by-function analysis. (ECF No. 6-12, PAGEID #: 1848.) Thus, although acknowledging it was supported by the snapshot of Plaintiff at that moment, the ALJ found it was

not consistent with the overall record, which reflected that Plaintiff's mental health symptoms improved with treatment. (*Id.*)

Second, the ALJ explained that he found Dr. Babson's opinion, which was also rendered in connection with his worker's compensation application, to be unpersuasive because her finding of complete inability to work was inconsistent with her own treatment notes and the overall record, and likewise provided no function-by-function vocational analysis. (*Id.* at PAGEID #: 1849.) Specifically, the ALJ noted that Plaintiff was able to complete the serial 3s and 7s during the examination without error, was able to provide his family and medical history without issue, noted he was alert and oriented during the examination, and that other self-reported statements (such as his reports that he did no household chores) were inconsistent with the overall record. (*Id.*)

Third, as the Commissioner points out, Dr. Koricke's opinion, which is not consistent with Dr. Mancuso's opinion, actually finds Plaintiff to be less limited than even the ALJ found him to be. For example, Dr. Koricke's opinion stated that Plaintiff could "continuously to frequently interact with general public," whereas the ALJ's RFC limited Plaintiff to occasional interactions with both the public and coworkers. (ECF No. 6-8, PAGEID ##: 1110; ECF No. 6-12 at PAGEID # 1840.) True, Dr. Koricke's opinion also opined that Plaintiff did not have "the ability to function in a workplace appropriately at this time due to the level of depression," but the ALJ addressed the internal inconsistency finding it was likely a typographical error considering the mental functional capacity assessment completed by Dr. Koricke found Plaintiff to be able to continuously or frequently perform in all of the mental health categories. (ECF No. 6-12, PAGEID #: 1848.)

In sum, the Undersigned finds that the ALJ provided sufficient reasons and analysis of these opinions and their respective weights, and that these are opinions are not so disproportionately in favor of Plaintiff's position as to render the ALJ's decision not supported by substantial evidence.

### 4. The Other Factors Support the ALJ's Opinion

The ALJ's discussion of Plaintiff's subjective allegations, treatment history, and daily activities further supports the RFC determination. At bottom, medical opinions are but one of the factors the ALJ had to consider. *See* 20 C.F.R. § 404.1513(a)(1)–(5). Here, the ALJ provided an in-depth discussion and evaluation of the medical opinion evidence, and weighed that against the other evidence in the record, including Plaintiff's activities of daily living and his mental health treatment generally. For example, with respect to Plaintiff's activities of daily living and treatment history, the ALJ noted that:

> In evaluating the claimant's consistency of subjective allegations with the evidence of the record, I first reiterate that the clinical examination findings do not fully corroborate his alleged symptoms and limitations. Indeed, the medical evidence suggests that the claimant's symptoms have been relatively well controlled with consistent conservative treatment and taking medications as prescribed. The record does not reflect the type of medical treatment one would expect for someone alleging being able to unable to walk and move freely, lift objects, reach, use his hands, concentrate, interact with others, or successfully complete many activities of daily living. Rather, the conservative treatment record reflects the claimant's deficits are no more than moderate with ongoing improvement not only physically with physical therapy but also with his mental health treatment. This inconsistent treatment suggest that the claimant's symptoms may not be as limiting as he has generally alleged.

> The evidence raises other questions about the claimant's consistency of subjective allegations. For instance, the claimant has described other daily activities that are not limited to the extent one would expect given his allegations of disabling symptoms. These activities include[] taking medications, preparing simple meals, managing personal hygiene, driving, shopping for groceries and necessities, using the computer, watching television, performing household chores including

17

vacuuming, doing [sic] dishes, mowing the lawn, gardening, and socializing outside the home once a month for dinner, talking [sic] with neighbors, and attending medical and mental health appointments (Exhibit 4E; Testimony). The claimant endorses difficulty following directions and changes in routine are difficult. While the scope and extent of these regular activities may change from day to day, the claimant's ability to participate in such activities tends to suggest that he is far more capable than he alleges and undermines the reliability of his allegations of disabling functional limitations.

(ECF No. 6-12 at PAGEID # 1845.)

Thus, although Plaintiff contends that the ALJ failed to consider the record as a whole, Plaintiff himself does not fully address all relevant parts of the record or explain how his activities of daily living and conservative treatment history are consistent with Dr. Mancuso's opinion or the other medical opinions upon which he relies.

Finally, it is also worth noting that when arguing that the ALJ "discredited a vast majority of those opinions," Plaintiff fails to mention that in some cases, the ALJ discredited an opinion because he found Plaintiff to be *more* limited. For example, the ALJ only found the state agency reviewers' opinions somewhat persuasive because he found Plaintiff to be moderately limited in interactions with others, whereas the state agency reviewers found only mild limitations. (ECF No. 6-12 at PAGEID ## 1846–47.) Likewise, Dr. Koricke's check-box form found Plaintiff to be less limited than both Dr. Mancuso and the ALJ. Thus, it is incorrect to state that all of the medical opinions "were far more restrictive" than the ALJ's assessment or that the ALJ only rejected opinions that were more restrictive. (*See* ECF No. 10, PAGEID #: 2193.)

## V.   CONCLUSION

In sum, when each medical opinion is analyzed independently and in conjunction with the overall record evidence, the Undersigned finds that the ALJ's opinion was well-reasoned and

otherwise supported by substantial evidence such that reasonable minds can accept the conclusion. *See Nash v. Comm'r of Soc. Sec.*, No. 19-6321, 2020 WL 6882255, at \*4 (6th Cir. Aug. 10, 2020) (explaining that substantial evidence "is less than a preponderance, but adequate for reasonable minds to accept" (citation and quotations omitted)).

Accordingly, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits.  Based on the foregoing, it is therefore **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED,** and that the Commissioner's decision be **AFFIRMED.**

## VI.    PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy. Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court.  *See, e.g., Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816*,* 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant

19

waived appeal of district court's denial of pretrial motion by failing to timely object to magistrate judge's report and recommendation).  Even when timely objections are filed, appellate review of issues not raised in those objections is waived.  *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . ." (citation omitted)).

**IT IS SO ORDERED.**

*/s/ S. Courter M. Shimeall*
**S. COURTER M. SHIMEALL**
**UNITED STATES MAGISTRATE JUDGE**

20